UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| LISA MARIE VAN DER VEER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 1:16-CV-046 |
| | ) | |
| V. | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*\*

Plaintiff Lisa Marie Van Der Veer brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claims for disability insurance benefits (DIB) and supplemental security income (SSI). The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision as it is supported by substantial evidence.

**I.**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support

1

a conclusion." *Id.* Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.

On August 4, 2010, Plaintiff filed her applications for DIB and SSI alleging disability as of November 15, 2006 (Tr.96, 239 and 246). She alleged disability due to a fractured neck, a ruptured disc in her neck, lupus, fatigue, joint

2

pain, depression, migraines, irritable bowel syndrome, gastritis, gastric prolapse, and nausea (Tr. 275). Plaintiff's claims were denied initially and on reconsideration and Plaintiff then requested a hearing on the matter. Administrative Law Judge ("ALJ") Marty S. Turner conducted a hearing, but thereafter denied Plaintiff's claims (Tr.96-103). On September 22, 2015, the Appeals Council remanded the case to the ALJ for further evaluation (Tr. 111-13). ALJ Turner conducted a supplemental hearing, but again found Plaintiff not disabled (Tr. 17-28). On April 13, 2016, the Appeals Council declined Plaintiff's request for review (Tr. 1-5), Thus, ALJ Turner's second decision became the final agency action for purposes of judicial review. This appeal followed and the case is ripe for review pursuant to 42 U.S.C. § 405(g)[1].

### III.

After careful consideration of the entire record, ALJ Turner found that Plaintiff's severe impairment was depression (Tr. 15). However, he determined that Plaintiff's fibromyalgia, carpal tunnel syndrome, and back, neck, and wrist pain were not severe (Tr. 20-22). The ALJ also found that she did not have an impairment

---

[1] The matter is before the Court on Plaintiff's motion for judgment on the record (DE 16 and 17). The acting commissioner has responded (DE 20). Plaintiff has not filed a reply.

3

or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1 (Tr. 22-24). The ALJ considered Plaintiff's claims and concluded that Plaintiff's allegations of disabling symptoms were not supported by the record based on the medical opinions, her medical treatment, and the medical evidence (Tr. 20-26). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels (Tr. 24). Plaintiff could perform simple one-three step instructions with occasional changes in a work setting and occasional interaction with the general public (Tr. 24). Relying on vocational expert testimony, the ALJ concluded that Plaintiff could perform other work existing in the significant numbers, including work as an assembler, a packer, a cleaner, a laundry worker, and a marker (Tr. 27). Consequently, the ALJ found Plaintiff not disabled (Tr. 28). The question is whether substantial evidence supports this finding. The short answer is yes.

IV.

For purposes of her application for DIB, Plaintiff was required to establish that she was disabled prior to December 31, 2011[2] (Tr. 18-19). To be eligible for disability benefits under

---

[2] In order to meet the requirements for insured status, an individual is required to have 20 quarters of coverage in a 40-quarter period ending with the first quarter of disability. See 42

4

Title II, Plaintiff must establish that she became disabled prior to the expiration of her insured status on December 31, 2011. *See* 20 C.F.R. §§ 404.130, 404.131; *Higgs v. Bowen*, 880 F.2d 860 (6th Cir. 1988). A non-disabling condition that later develops into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits under Title II. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

Plaintiff argues that that the ALJ improperly evaluated her impairments in finding that her fibromyalgia, carpal tunnel syndrome, and prior neck fracture were not severe (Tr. 20-22) (DE 17 at 7-8). In this case, the ALJ properly found the impairments, singly and in combination, did not impose significant physical work-related limitations (Tr. 20-22). Plaintiff has the burden of showing that the impairment is severe and that it met the 12-month durational requirements of the Act. *See Harley v. Comm'r of Social Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). The impairment must significantly limit Plaintiff's ability to perform

---

U.S.C. §§ 416(i)(3)(B) and 423(c)(1)(B); 20 C.F.R. § 404.130 (2016). To be entitled to benefits under Title II, Plaintiff must establish that she was disabled prior to the date her insured status expired, December 31, 2011 (Tr. 18-19). Id. Thus, the relevant time period for consideration of Plaintiff's claim is from November 15, 2006, until December 31, 2011.

5

basic work activities. *Id.*; 20 C.F.R. §§ 404.1509, 404.1521, 416.909, 416.921,

In assessing whether Plaintiff's impairments significantly limited her ability to perform basic work activities, the ALJ considered the record as a whole, including Plaintiff's subjective complaints (Tr. 20-26). Contrary to Plaintiff's argument (DE 17 at 9), the ALJ properly determined that Plaintiff's allegations regarding her limitations were not supported by the record (Tr. 22, 24). The ALJ properly found Plaintiff's allegations inconsistent with the record as a whole, including the medical opinions, her medical treatment, and the medical evidence (Tr. 20-26). The ALJ's consideration of the subjective aspects of Plaintiff's complaints comported with the regulations at 20 C.F.R. §§ 404.1529, 416.929 (2016). To analyze a claimant's subjective complaints of pain, an ALJ examines the following: 1) the claimant's daily activities; 2) the duration, frequency and intensity of pain; 3) dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions. *See* 20 C.F.R. §§ 404.1529, 416.929. An ALJ's determination is entitled to "great weight and deference" and the review is limited to determining whether the ALJ's reasons for discrediting the allegations are reasonable and supported by substantial evidence in the record. *See Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637 (6th Cir. 2013). Factual

6

determinations rest with the ALJ, and "[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Admin.*, 693 F.3d 709, 713-14 (6th Cir. 2012).

In evaluating Plaintiff's impairments, the ALJ properly weighed the medical opinions in the record (Tr. 21-22). *See* 20 C.F.R. §§ 404.1529(c)(3)(vii); 416.929(c)(3)(vii). In November 2010, Daniel Rinehart, M.D., performed a consultative examination and opined that Plaintiff had no impairment-related physical limitations (Tr. 22, 503-05). In May 2012, Angela Joynes, M.D., provided an opinion that Plaintiff's physical impairments prevented her from performing tasks with light or moderate exertion (Tr. 21, 547). In November 2015, Louise Ledbetter, M.D., opined that Plaintiff could lift less than 10 pounds occasionally and frequently, sit for less than 2 hours in an 8-hour workday, and stand/walk for less than 2 hours in an 8-hour workday (Tr. 21, 25, 649-51). Plaintiff could never twist, stoop, crouch, reach, or feel (Tr. 650). State agency medical consultants' reviewed the medical records and opined that Plaintiff did not have a severe physical impairment (Tr. 22, 517-20, 542). It is the function of the ALJ to resolve the conflicts between the medical opinions. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins. The fact that Justice now disagrees with the ALJ's decision

does not mean that the decision is unsupported by substantial evidence.").

The ALJ properly gave great weight to the opinions of Dr. Rinehart and the state agency medical consultants (Tr. 22). In November 2010, Dr. Rinehart performed a consultative examination (Tr. 22, 503-05). Plaintiff could get on and off the examination table without difficulty and heel and toe walk, and she exhibited full ranges of motion and full strength (Tr. 505). Dr. Rinehart concluded that Plaintiff had no impairment-related physical limitations (Tr. 505). The ALJ found Dr. Rinehart's opinion consistent with the medical evidence and gave it great weight (Tr. 22).

Following the consultative examination, in December 2010, Roslynn Webb, M.D., a state agency medical consultant, reviewed the medical records and found that Plaintiff did not have a severe physical impairment (Tr. 22, 517-20). *See Gustafson v. Comm'r of Soc. Sec.*, 550 F. App'x 288, 289 (6th Cir. 2014) (finding that the ALJ may consider the opinions of non-examining state agency medical consultants); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013)(citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)); Social Security Ruling ("SSR") 96-2p (finding of fact and opinions by non-examining State agency doctors is expert evidence that must be considered). In April 2011, Nathaniel

Robinson, M.D., reviewed the medical records and affirmed Dr. Webb's opinion that Plaintiff did not have a severe impairment (Tr. 22, 542). The ALJ found the state agency medical consultants' opinion consistent with the record, including the subsequent treatment records (Tr. 22). Consistent with these medical opinions, the ALJ properly found that Plaintiff did not have a severe impairment (Tr. 20-22, 517-20, 542).

Plaintiff argues that the ALJ improperly evaluated Dr. Joynes' opinion that Plaintiff's physical impairments prevented light or moderate exertional tasks [3](DE 17 at 4-6). at 4-6. However, the ALJ properly considered Dr. Joynes' opinion, and found it inconsistent with he record and entitled to little weight for several reasons (Tr. 21, 24, 543). First, the ALJ properly recognized that Dr. Joynes was a treating physician, but had not seen Plaintiff between August 2009 and May 2012 (Tr. 21, 24). *See* 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). Second, the ALJ properly found Dr. Joynes' opinion inconsistent with the treatment notes and Plaintiff's conservative treatment (Tr. 21).

---

[3] Plaintiff argues that the ALJ failed to comply with the Appeals Council's September 2015 remand order. See Pl.'s Br. at 4-6. As discussed above, the ALJ properly evaluated Dr. Joynes' opinion in accordance with the remand order (Tr. 21, 24). However, even assuming Plaintiff's argument, this would not be a basis for remand as this Court's jurisdiction is limited to whether the ALJ's decision is supported by substantial evidence. Further, Plaintiff made the same argument to the Appeals Council before they denied her request for review (Tr. 2, 8-10).

*See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("...treatment notes did *not* demonstrate a basis for concluding that Temples had marked to extreme limitations in numerous areas of work-related mental functioning…" and were "…contradicted by other evidence in the record…"). Contrary to Dr. Joynes' suggestion that Plaintiff could not perform light or moderate exertion, Plaintiff retained a normal gait, normal heel and toe walking, full ranges of motion, full strength, and intact sensations (Tr. 20-21, 370, 423, 426, 428-29, 431, 434, 436, 505, 554, 560-61, 599, 603, 611). Plaintiff claims that the ALJ failed to identify these inconsistencies when evaluating the opinion, but the ALJ is not required to do so. *See Crum v. Comm'r of Soc. Sec.*, No. 15-3244, 2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)). The ALJ also found inconsistent with Plaintiff's conservative treatment (Tr. 21). *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016) ("The ALJ noted that the records indicate Kepke received only conservative treatment for her ailments, a fact which constitutes a "good reason" for discounting a treating source opinion."); *Lester v. Soc. Sec.*

*Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015). As discussed in more detail below, Plaintiff had significant gaps in treatment and declined more aggressive forms of treatment (Tr. 21-22). Based on the inconsistencies within the record and Dr. Joynes' lack of recent medical treatment, the ALJ properly gave Dr. Joynes' opinion little weight (Tr. 21).

The ALJ also properly evaluated Dr. Ledbetter's opinion and found it entitled to no weight (Tr. 21, 25). In November 2015, Dr. Ledbetter opined that Plaintiff could lift less than 10 pounds occasionally and frequently, sit for less than 2 hours, and stand/walk for less than 2 hours (Tr. 21, 25, 649). Plaintiff could never twist, stoop, crouch, reach, or feel (Tr. 650). In weighing the opinion, the ALJ properly considered Dr. Ledbetter's treatment history with Plaintiff (Tr. 21, 25). *See* 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). Dr. Ledbetter first saw Plaintiff in June 2015, six months prior to providing the medical opinion (Tr. 21, 613). She saw Plaintiff five times during those six months (Tr. 597, 601, 605, 609, 613). However, the doctor did not perform a physical examination on two of those visits (Tr. 607, 613). The ALJ also properly found the opinion inconsistent with the record (Tr. 21). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Temples*, 515 F. App'x at 462 ("...treatment notes did not demonstrate a basis for concluding that Temples had marked

11

to extreme limitations in numerous areas of work-related mental functioning…" and were "…contradicted by other evidence in the record…"). First, the ALJ noted an internal inconsistency in Dr. Ledbetter's opinions (Tr. 25). Dr. Ledbetter indicated that Plaintiff had an extreme limitation in her ability to make simple decisions, but somehow could manage any awarded benefits in her own best interest (Tr. 646, 648). There is no reasonable explanation how an individual with extreme limitations in making simple decisions could manage their own benefits. This discrepancy undermines Dr. Ledbetter's opinions. Second, the ALJ found Dr. Ledbetter's opinion inconsistent with the record as a whole (Tr. 21). While Dr. Ledbetter suggested that Plaintiff had extreme limitations where she was bedridden for more than four hours in an eight-hour workday, the doctor's objective findings were normal (Tr. 649). The doctor's physical findings show that Plaintiff had a normal gait, full ranges of motion, full strength, intact sensation, and no edema, tenderness, or spasms (Tr. 599, 603, 611). Contrary to the doctor's suggestion that Plaintiff had memory loss, her memory remained intact (Tr. 599, 603, 610, 647, 650). As such, the ALJ properly found Dr. Ledbetter's opinion based on Plaintiff's subjective complaints rather than the objective evidence (Tr. 21). *See Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)) ("The ALJ is not required to simply accept the [opinion] of a medical examiner based

12

solely on the claimant's self-reports of symptoms, but instead is tasked with interpreting medical opinions in light of the totality of the evidence."); *Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. 2014) (declining to give weight to a doctor's opinion that was only supported by the claimant's reported symptoms). Dr. Ledbetter also suggested that Plaintiff's limitations began in 2006, but she did not meet Plaintiff until 2015 and she cited to no objective evidence from 2006 (Tr. 21, 648, 651). The suggested limitations were inconsistent with Dr. Rinehart's consultative examination after that date (Tr. 503-05). Accordingly, the ALJ properly found Dr. Ledbetter's opinion inconsistent with the record and entitled to no weight (Tr. 21, 25).

In addition to the medical opinions, the ALJ properly weighed Plaintiff's treatment for her allegedly disabling impairments (Tr. 21-22). *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (Modest treatment is "inconsistent with a finding of total disability."). Plaintiff alleged disability since November 2006, but received no treatment between April 2007 and February 2008 (Tr. 21-22, 370, 446). She then sought no treatment until September 2008 (Tr. 376). Plaintiff fractured her cervical spine in March 2009, but the fracture did not require surgery and was treated with a collar (Tr. 378, 384, 381, 423). Plaintiff declined a physical therapy referral for her neck pain (Tr. 423). She subsequently received no treatment between August 2009 and May

2012 (Tr. 543). She then had no treatment for three years until January 2015 (Tr. 548-49). Plaintiff sought treatment once for carpal tunnel syndrome, but declined surgery and an injection (Tr. 21, 47, 550-53). She got no further treatment for the impairment (Tr. 21-22). The record shows Plaintiff had no health insurance, but there is no indication that Plaintiff was ever denied medical treatment because of financial reasons (Tr. 68). *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) ("However, there is no evidence Goff was ever denied medical treatment due to financial reasons."). Plaintiff suggests that she suffered from side effects. However, as she had significant gaps in treatment when she received no medication, so she could not have suffered from side effects (Tr. 504, 508). Further, the medical records do no document any ongoing side effects (Tr. 296, 313). *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665 (6th Cir. 2004) ("Although Essary testified that she suffered from dizziness and drowsiness as a result of her medications, Essary's medical records make no indication that Essary reported such side effects to any of her physicians."); *Hopkins v. Comm'r of Soc. Sec.*, 96 F. App'x 393, 395 (6th Cir. 2004) (alleged medication side effects of drowsiness, nausea, and blurred vision "not documented in the record"). Plaintiff's conservative treatment was inconsistent with the existence of a severe physical impairment (Tr. 21-22).

Moreover, when Plaintiff did seek treatment, the medical records showed that Plaintiff's allegations were inconsistent with the medical evidence (Tr. 20-21). *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1529); Rudd, 531 F. App'x at 726-27 (citations omitted). Plaintiff alleged significant lifting, standing, and walking limitations, but the physical examinations revealed a normal gait, normal heel and toe walking, full ranges of motion, full strength, and intact sensations (Tr. 20-21, 370, 423, 426, 428-29, 431, 434, 436, 505, 554, 560-61, 599, 603, 611). Contrary to her complaints of disabling pain, Plaintiff appeared in no acute distress (Tr. 423, 426, 428, 433, 435, 550). The ALJ also properly evaluated Plaintiff's fibromyalgia under SSR 12-2p, and found that there were no tender point testing necessary to establish the impairment as a medically determinable impairment (Tr. 20). Plaintiff claims that the January 2015 cervical MRI supports a severe impairment (Tr. 21) (DE 17 at 8). However, the January 2015 MRI shows that Plaintiff's condition had not changed since March 2009 (Tr. 409, 427, 548-49). The state agency medical consultants' reviewed the March 2009 MRI and found that it did not support a finding of a severe physical impairment (Tr. 520). Plaintiff also argues that the ALJ failed to consider her alleged fatigue, but she made inconsistent reports and denials of fatigue depending on the medical provider (Tr. 433, 435, 550, 559). As such, the ALJ

properly found the objective evidence inconsistent with Plaintiff's allegations of disability (Tr. 14- 15).

The ALJ addressed other inconsistencies in the record (Tr. 21-22). This was proper. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) (The ALJ observed that Johnson's answers to his disability questionnaire in June 2007 "described greater functioning" than did his hearing testimony…). For example, the ALJ properly found Plaintiff's description of her daily activities inconsistent with her allegations (Tr. 21-22). *See Temples*, 515 F. App'x at 462 ("Further, the ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."). Here, Plaintiff retained the ability to maintain her personal care, care for pets, prepare meals, clean, do laundry, do yard work, drive, shop, and read (Tr. 290-93, 427, 433, 510-11). The medical records show that Plaintiff cut her leg while using a chainsaw and her finger while weed eating (Tr. 21-22, 49, 433, 554). The use of a chainsaw and a weed eater is inconsistent with her alleged limitations (Tr. 21-22). The ALJ properly considered Plaintiff's daily activities in evaluating her physical impairments (Tr. 21-22).

Plaintiff points out that the ALJ's most recent assessment of the severity of her impairments conflicts with his first decision where he determined that Plaintiff's severe impairments included status post neck fracture, arthritis, and fibromyalgia (Tr. 98) (DE 18 at 8). In that earlier decision, based on those impairments, the ALJ found that Plaintiff could perform a full range of medium work (Tr. 99) (DE 18 at 8). True, but since the 2012 decision, the ALJ had three years of additional medical records that the ALJ considered in evaluating Plaintiff's impairments (Tr. 20-22). As discussed above, the medical records show that Plaintiff did not require ongoing medical treatment and the medical evidence did not support the finding of a severe impairment (Tr. 20-22). Further, even assuming that the ALJ erred in not finding these impairments severe and should have found Plaintiff capable of medium work, it would not support remand. The vocational expert testified to the existence of medium and light work existing in the national economy (Tr. 56-57). The ALJ found Plaintiff could perform these jobs (Tr. 27). Remanding the case to the ALJ to limit Plaintiff to medium or light work would serve no purpose as the ALJ already found Plaintiff capable of medium and light jobs (Tr. 27).

Finally, Plaintiff argues that the ALJ failed to consider the seven strength demands required by SSR 96-8p. (DE 18 at 8-9). While SSR 96-8p requires a "function-by-function evaluation to

17

determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (internal citations and quotation marks omitted). Further, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing," as there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Id.* (internal citations and quotation marks omitted). "SSR 96-8p clearly states that the ALJ must consider each function separately; it does not state that the ALJ must discuss each function separately in the narrative of the ALJ's decision." *Delgado,* 30 F. App'x at 547-48. In the instant case, the ALJ properly evaluated Plaintiff's physical impairments and found that they did not impose more than minimal limitations in her ability to perform the basic work activities (Tr. 20-22). The ALJ properly concluded that Plaintiff could perform work at all exertional levels (Tr. 24). The ALJ properly considered the seven strength demands in finding the impairments not severe (Tr. 20, 22, 24).

After engaging in the above analysis, the ALJ incorporated into Plaintiff's RFC the impairments and restrictions supported by the record, and found Plaintiff capable of a range of simple work with occasional work setting changes and interaction with the general public (Tr. 24). The burden lies with the claimant to

prove that she is disabled. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted). Where, as here, Plaintiff demonstrates that she can no longer do her past work, "[t]he burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *Id.* (citations omitted). The vocational expert testified in response to a hypothetical question, which incorporated the same limitations as the RFC, that such an individual could perform medium and light work as an assembler, a packer, a cleaner, a laundry worker, and a marker (Tr. 27, 55-57). *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010). Although the hypothetical question must set forth with reasonable precision the claimant's impairments, it need only include those impairments and limitations found supported by the record. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible."); *Justice*, 515 F. App'x at 588 (citations omitted). As discussed above, the ALJ incorporated the limitations supported by the record into the RFC and corresponding hypothetical question (Tr. 24, 27, 55-57). As such, the ALJ's decision is supported by substantial evidence.

In summary, the ALJ properly included all limitations supported by the record into Plaintiff's RFC (Tr. 24). The vocational expert testified that an individual with Plaintiff's limitations could perform work existing in significant number in the national economy (Tr. 27, 55- 57). Therefore, the ALJ properly concluded that Plaintiff was capable of other work and, thus, not disabled (Tr. 27-28).

V.

The Court having found no legal error on the part of the ALJ and that his decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for judgment on the record (DE 16) be, and the same hereby is, **DENIED**.

A separate judgment in conformity herewith shall this date be entered.

This the 29th day of June, 2018.

Sitting by Designation.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge